UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES,<br><br>Plaintiff,<br><br>v.<br><br>DEBRUIN CONSTRUCTION, INC., et al.,<br><br>Defendants. | Case No. 12-cv-05477-JCS<br><br>**ORDER GRANTING EX PARTE APPLICATION FOR SERVICE OF FIRST AMENDED SUMMONS AND FIRST AMENDED COMPLAINT ON DEFENDANTS DEBRUIN CONSTRUCTION, INC. AND RICHARD DEBRUIN BY PUBLICATION**<br><br>Re: Dkt. No. 35 |

## I. INTRODUCTION

The Board of Trustees, in their capacities as Trustees of the Laborers Health and Welfare Trust Fund for Northern California; Laborers Vacation-Holiday Trust Fund for Northern California; Laborers Pension Trust Fund for Northern California; and Laborers Training and Retraining Trust Fund for Northern California ("Plaintiffs") filed an ex parte application to serve the summons and complaint on Debruin Construction, Inc. ("Debruin") by publication on December 16, 2013. *See* Dkt. No. 20. In accordance with the Court's order, Plaintiffs filed supplementary materials on January 9, 2013. *See* Dkt. No. 26. On January 23, 2014, the Court denied the ex parte application without prejudice. *See* Dkt. No. 28. On May 19, 2014, Plaintiffs filed a first amended complaint and first amended proposed summons. *See* Dkt. Nos. 32, 33. On May 20, 2014, Plaintiffs filed a second ex parte application for service of the first amended complaint and first amended proposed summons on Debruin and Richard Debruin ("R. Debruin") (together, "Defendants") by publication ("Application"). *See* Dkt. No. 35. For the reasons stated below, the Court GRANTS the Application.

## II. BACKGROUND

Plaintiff seeks permission to serve Defendants by publication rather than by other means

such as personal service. The Federal Rules of Civil Procedure provide that service upon an individual or business entity defendant may be effected in any judicial district of the United States pursuant to the law of the state in which the district court is located or in which service is effected. *See* Fed. R. Civ. P. 4(e)(1), (h)(1)(A). This Court is located in California and Plaintiffs seek to effect service upon Debruin and R. Debruin in this state. Service by publication is permissible under California law in certain circumstances:

> (a) A summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article and that . . .
>
> (1) A cause of action exists against the party upon whom service is to be made or he or she is necessary or proper party to the action.

Cal. Code Civ. Proc. § 415.50. Accordingly, the key inquiry for the Court is whether Defendants "cannot with reasonable diligence be served in another manner" pursuant to California law. *Id.* Other manners of service include delivering process to the defendant or his agent personally (sections 415.10, 416.90), or at his dwelling house, usual place of abode, or usual place of business (section 415.20), or by means of ordinary first-class mail or airmail, or registered or certified airmail (sections 415.30, 415.40). *See* Cal. Code Civ. Proc. § 415.50, Cal. Judicial Council cmt. "These methods of service make service by publication unnecessary except where a defendant's whereabouts and his dwelling house or usual place of abode, etc., cannot be ascertained with reasonable diligence, and where no person who may be served on his behalf can be located with reasonable diligence." *Id.*

To determine whether a plaintiff has exercised "reasonable diligence" for purposes of section 415.50(a), a court must examine the affidavit required by the statute to determine whether the plaintiff "took those steps a reasonable person who truly desired to give notice would have taken under the circumstances." *Donel, Inc. v. Badalian*, 87 Cal. App. 3d 327, 333 (1978). "The term 'reasonable diligence' . . . denotes a thorough systematic investigation and inquiry conducted in good faith by the party or his agent or attorney." *Watts v. Crawford*, 10 Cal. 4th 743, 749 n.5 (1995). Because of due process concerns, service by publication must be allowed "only as a last resort." *Donel*, 87 Cal. App. 3d at 332. The chosen method must be "reasonably certain to inform

those affected . . . or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

"Before allowing a plaintiff to resort to service by publication, the courts necessarily require him to show exhaustive attempts to locate the defendant, for it is generally recognized that service by publication rarely results in actual notice." *Watts*, 10 Cal. 4th at 749 (internal citations omitted). That a plaintiff has taken one or a few reasonable steps does not necessarily mean that "all myriad of other avenues" have been properly exhausted to warrant service by publication. *Donel*, 87 Cal. App. 3d at 333. *See also AF Holdings LLC v. Pecadeso*, 3:12-CV-02404-SC JSC, 2013 WL 394190, at *1 (N.D. Cal. Jan. 30, 2013); *Duarte v. Freeland*, C-05-2780 EMC, 2008 WL 683427, at *2 (N.D. Cal. Mar. 7, 2008). "A number of honest attempts to learn defendant's whereabouts or his address by inquiry of relatives, friends, and acquaintances, or of his employer, and by investigation of appropriate city and telephone directories, the voters' register, and the real and personal property index in the assessor's office, near the defendant's last known location, are generally sufficient. These are the likely sources of information, and consequently must be searched before resorting to service by publication." Cal. Civ. Proc. Code § 415.50, Cal. Judicial Council cmt.

### III.  FACTS

Plaintiffs have submitted Affidavits of Reasonable Diligence from Sherry Shada ("Shada") and Guy Robinson ("Robinson"), employees of First Legal Support Services who were retained to serve Debruin or its agent. *See* Decl. of Roberta D. Perkins in Supp. of Application ("Perkins Decl."), Ex. 3. Plaintiffs have also provided a declaration from Roberta D. Perkins ("Counsel"), an attorney for Plaintiffs, which describes the efforts taken to effectuate service on the Defendants. *See* Perkins Decl.

Counsel declares that, before the complaint was filed, Plaintiffs obtained information about Debruin from the California Secretary of State website. *Id*. ¶ 3. According to Counsel, the Secretary of State website listed Debruin as an active corporation at 209 West Charter Way in Stockton, California, and its agent for service as R. Debruin at 3708 McDougald Boulevard in

Stockton, California, as of September 20, 2013. *Id.* ¶ 3, Ex. 1. Counsel states that she rechecked the website on April 29, 2014 and found that Debruin is now listed as having a suspended status and all other information is unchanged. *Id.* ¶ 3, Ex 1. Plaintiffs also confirmed that as of September 20, 2012, Debruin was a licensed contractor through a search of the Contractors State License Board ("CSLB") website, which listed Debruin's business address as P.O. Box 1355, French Camp, California. *Id.* ¶ 4, Ex 2. The CSLB website listed R. Debruin as the managing officer, CEO, and president, and it listed Marilyn Ann Garn as an officer who had disassociated from the company on March 26, 2012. *Id.* ¶ 4, Ex 2. When Counsel checked the website again on April 29, 2014, it showed that Debruin's license had expired on April 30, 2013 and had not been renewed. *Id.* ¶ 4, Ex 2. Counsel declares that the information obtained from the Secretary of State and CSLB and the summons and complaint were given to First Legal Support Services with the instructions to personally serve R. Debruin, as agent for service of Debruin, at either his home address or the corporation's business address. *Id.* ¶ 5.

According to Shada's affidavit, she attempted service four times: (1) on October 29, 2012, Shada reported that there was "no answer at the door, no vehicles, only porch light was on, quiet house" at R. Debruin's home address; (2) on October 30, 2012, Shada reported that there was "no answer at the door, some lights on, no vehicles" at the same home address, and that she "tried neighbors and also got no answer at the door;" (3) on November 2, 2012, Shada reported that there was "no answer at the door, lights on inside, no activity seen" at the same address; and (4) on November 26, 2012, Shada reported that the documents were "Returned Not Served on: [Debruin]" at his same home address. *See id.* Ex. 3 at 1.

According to Robinson's affidavit, he attempted service three times: (1) on November 8, 2012, Robinson reported that the business address for Debruin was a "bad address," per other tenants who apparently told him that Debruin or its agent moved out about one month prior, and there was no known forwarding information; (2) on November 14, 2012, Robinson reported that the home address for R. Debruin was "vacant empty residence;" and (3) on November 26, 2012, Robinson reported that the documents were "Returned Not Served on: [Debruin]" at the business address. *Id.* Ex. 3 at 2.

1    Counsel declares that, after these unsuccessful attempts at personal service on R. Debruin's
2    home address and Debruin's business address, Plaintiffs requested change of address information
3    from the U.S. Postal Service. *Id.* ¶ 6, Ex. 4. The Postal Service did not have any change of address
4    forms on file for any of the addresses, but did disclose that the holder of the post office box at
5    French Camp was Lori J. Debruin, R. Debruin's wife. *See id.* ¶ 6. Counsel declares that, on June 7,
6    2013, a paralegal in her office searched public records and limited credit information through an
7    internet-based legal research provider for information on R. Debruin. *Id.* ¶ 8. This search
8    confirmed the French Camp post office box as R. Debruin's last known address and the
9    McDougald Boulevard address as his previous address. *Id.* The search also confirmed that R.
10   Debruin and Lori Debruin were the owners of the McDougald Boulevard property. *Id.* Counsel
11   also states that the paralegal checked the telephone numbers listed in the report but they were no
12   longer in service. *Id.*

13   According to Counsel, Plaintiffs, in their continuing effort to locate a current address for R.
14   Debruin, asked the Investigation Division of its process server, First Legal Support Services, to
15   conduct a skip trace, which found that R. Debruin and his wife resided at the McDougald
16   Boulevard address. *Id.*¶ 9, Ex. 6. In an email communication, the process server offered to conduct
17   a field investigation at a cost of $95 per hour and $0.65 per mile, with a recommended time frame
18   of ten to fifteen hours, but there is no indication that Plaintiffs engaged the server for these
19   services. *Id.* Ex. 6. According to Counsel, on October 3, 2013, her paralegal ran another internet
20   search, this time on Lori Debruin, which showed that the McDougald property had been sold at
21   auction on August 28, 2013. *Id.* ¶ 10. Counsel states that records from the San Joaquin County
22   Recorder's Office showed that the property had been conveyed to an entity named CVPH LP, but
23   her search of the Secretary of State website and the internet yielded no pertinent information
24   regarding that entity. *Id.* According to Counsel, this search also uncovered an advertisement for
25   the sale of a boat, listing R. Debruin as the contact person, but the number listed on the
26   advertisement was no longer in service. *Id.*

27   Counsel declares that on June 14 and December 16, 2013, respectively, she mailed a copy
28   of Plaintiffs' ex parte application for continuance of case management conference and original ex

1  parte application for service by publication to the West Charter Way address. *Id.* ¶ 7. Both were
2  returned as undeliverable and unable to forward. *Id.* Ex 5.
3        Counsel declares that on May 13, 2014, her paralegal conducted a new search, using the
4  firm's legal research provider, on R. Debruin and Lori Debruin and checked credit information for
5  any current addresses, but found no new information. *Id.* ¶ 11. Counsel states that she conducted
6  an internet search on both individuals, including checking online telephone directories for
7  Stockton, French Camp, and San Joaquin County. *Id.* She declares that she checked the San
8  Joaquin County Registrar of Voters website and found that R. Debruin is a registered voter in San
9  Joaquin County. *Id.* According to Counsel, her colleagues checked for filings involving R.
10 Debruin or Lori Debruin in the U.S. Bankruptcy Court for the Eastern District of California from
11 2012 to the present, as well the San Joaquin County Superior Court. *See id.* Counsel declares that
12 the only result was one personal injury action in 1999 against Lori Debruin. *Id.*
13       In a final attempt to effect service, Counsel declares that her office prepared a Notice of
14 Lawsuit and Request to Waive Service of a Summons and a Waiver of the Service of Summons
15 and mailed a copy of the form, the original summons and complaint, and a self-addressed,
16 stamped return envelope to Debruin at the French Camp post office box. *Id.* ¶ 12. The mailing was
17 returned as undeliverable on May 19, 2014, marked with a Postal Service stamp "Box Closed—
18 No Order." *Id.* Ex. 8.

### IV.   ANALYSIS

20       The Court denied Plaintiffs' first ex parte application to serve summons and complaint on
21 Debruin by publication because Plaintiffs had failed to demonstrate that Debruin could not "with
22 reasonable diligence be served in another manner" under California law. *See Bd. of Trs. v.*
23 *Debruin Constr., Inc.*, No. 12-cv-054777-JCS, 2014 WL 261814, at *2–*3 (N.D. Cal. Jan. 23,
24 2014); Cal. Code Civ. Proc. § 415.50. Specifically, the Court found that Plaintiffs failed to show:
25 (1) why service on R. Debruin constituted service on Debruin; (2) how and when the business and
26 home address of Debruin and R. Debruin were obtained and confirmed; (3) whether Plaintiffs had
27 searched any city or telephone directories; (4) the qualifications of Plaintiffs' Field Agents and the
28 types of sources they used to locate Debruin and R. Debruin; (5) whether Plaintiffs had attempted

to serve Debruin by substitute service or by mail; and (6) explanations for lapse in Plaintiffs' attempts to serve process since November 2012. *Debruin Constr.*, 2014 WL 261814, at *2–*3. Plaintiffs' instant Application addresses the Court's concerns, and it demonstrates that Plaintiffs have made exhaustive attempts to locate Defendants and to give them notice of service of process. *See* Perkins Decl., Exs. 1–8.

First, Plaintiffs address how and why service on R. Debruin would constitute service on Debruin. Plaintiffs conducted a search of the Secretary of State's website on September 20, 2012, which named R. Debruin as the registered agent for service of process for Debruin. Perkins Decl. Ex. 1 at 1. Additionally, Plaintiffs have since amended their complaint to add R. Debruin as a Defendant. *See* Dkt. No. 32.

Second, Plaintiffs address the Court's concern that they did not indicate how Defendants' home and businesses addresses were obtained, any acts that confirmed these addresses, or whether Plaintiffs searched all likely sources of location information. Plaintiffs initially located Defendants' home and business addresses through a search of the Secretary of State website and the CSLB website in 2012. Perkins Decl. Exs. 1, 2. These searches generated three possible addresses at which to reach Defendants—a home address, a business address, and a business post office box owned by R. Debruin's wife, Lori. *See id*. Plaintiffs have checked these sources again, as recently as April 29, 2014, and found no new information except that DeBruin's status as a corporation is now listed as "inactive" and R. Debruin's contractor license has expired. *See id*.

Third, Plaintiffs address the Court's concern that city and telephone directories had not been searched. Plaintiffs have now checked many other likely sources for location information, including city and telephone directories, the United States Postal Service, limited credit information, a skip trace, internet searches, voter registries, federal bankruptcy and state court filings, and the San Joaquin County Recorder's Office. *See* Perkins Decl. ¶¶ 6, 8–11, Exs. 4, 6. Plaintiffs, their Counsel, or their process server checked these sources for information on each of the three known addresses for Debruin, R. Debruin, Lori Debruin, and the entity to which the trustee's deed under default on the Debruin's McDougald Boulevard home was assigned. *Id*. Counsel or her paralegal has attempted to call all telephone numbers discovered through public

7

records searches, but none were in service. Perkins Decl. ¶¶ 8, 10.

Fourth, Plaintiffs address the Court's request for more information regarding the Field Agents. Plaintiffs' Field Agents are registered process servers who work for First Legal Support Services. Perkins Decl. ¶ 5, Ex. 3. The Field Agents attempted personal service on the business and home addresses of Defendants after Plaintiffs identified the addresses through the Secretary of State's website and the CSLB website. *Id*. Ex. 3. The Field Agents' multiple attempts to serve Debruin at the business and home addresses were unsuccessful. *Id*.

Fifth, Plaintiffs' attempted service by mail on May 13, 2014, addresses the Court's concern that Plaintiffs did not attempt the manners of service specified in Chapter 4, Article 3 of California Code of Civil Procedure.

Sixth, Plaintiffs explain any lapse in attempts. After attempting to serve Defendants through their process servers but failing, Plaintiffs, rather than continuing to attempt service, tried other methods of locating Defendants. Plaintiffs' searches since November 2012 revealed that the home property was in default status and had been sold at auction on August 28, 2013. Perkins Decl. ¶ 10. Mailings to the business address were returned marked undeliverable and unable to forward. *Id.* Ex. 5. In light of the seeming invalidity of the home and business addresses, Plaintiffs attempted service by mail on the French Camp post office box on May 13, 2014, but the mailing was returned as undeliverable with a Postal Service stamp "Box Closed—No Order. " *Id.* ¶ 12, Ex. 8. Plaintiffs' most recent attempt to effect service was this attempted service by mail.

The Court notes that Plaintiffs did not hire a field investigator to perform a ten to fifteen hour investigation at $95.00 per hour and $0.65 per mile, as offered by First Legal Support Services after the skip trace revealed no new information. However, the Court finds that this step was not necessary in light of Plaintiffs' otherwise thorough inquiry. *See Watts*, 10 Cal. 4th at 749 n.5 (quoting *Vorburg v. Vorburg*, 18 Cal.2d 794, 797 (1941)) (some citations omitted).

Accordingly, the Court finds that Plaintiffs have exercised "reasonable diligence" in attempting to serve Defendants, and service by publication is appropriate.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' Application. Plaintiffs may serve

8

Defendants by publishing the summons in *The Record*—a newspaper of general circulation in San Joaquin County, California that is most likely to give actual notice to Defendants—at least once per week for four successive weeks, with at least five days intervening between the respective publication dates. Service by publication shall be deemed complete after the twenty-eighth day after the first day of publication. *See* Fed. R. Civ. P. 4(e)(1); Cal. Civ. Code § 415.50; Cal. Gov. Code § 6064.

If Defendants' addresses are ascertained prior to the expiration of the time prescribed for service of summons, then a copy of the first amended summons, first amended complaint, and this order for publication shall immediately be mailed to Defendants.

**IT IS SO ORDERED.**

Dated: June 25, 2014

JOSEPH C. SPERO
United States Magistrate Judge