United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES, THE,<br><br>         Plaintiff,<br><br>    v.<br><br>DEBRUIN CONSTRUCTION, INC.,<br><br>         Defendant. | Case No. 12-cv-05477-JCS<br><br>**REPORT AND RECOMMENDATION RE MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 49 |

## I.  INTRODUCTION

In this ERISA enforcement action, Plaintiffs bring a Motion for Default Judgment (the "Motion") seeking entry of default judgment and an order awarding unpaid employee benefit contributions, liquidated damages, interest, and attorneys' fees and costs against DeBruin Construction, Inc. ("DeBruin").[1] Plaintiffs also request an order compelling DeBruin to submit to an audit of its records. The Motion came on for hearing on Friday, November 14, 2014 at 9:30 a.m. Plaintiffs submitted supplemental materials in support of the Motion on January 9, 2015. Because DeBruin did not appear or consent to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c), this case is ordered reassigned to a district judge with the following Report and Recommendation. For the reasons stated below, it is recommended that the Motion be GRANTED.

---

[1] Plaintiffs initially named Richard DeBruin as a Defendant in this action, along with DeBruin Construction, Inc. Although the Clerk entered default as to both Defendants, *see* Docket No. 45, Plaintiffs dismissed Richard DeBruin without prejudice prior to bringing their default judgment motion. *See* Docket No. 48. At the Motion hearing, Plaintiffs stipulated that they do not seek entry of default judgment as to Richard DeBruin but only as to the corporate defendant.

## II. BACKGROUND

### A. Facts

The operative complaint in this action is the First Amended Complaint ("FAC"). In the FAC, the following trust funds (the "Trust Funds") are named as Plaintiffs: (1) Laborers Health and Welfare Trust Fund for Northern California; (2) Laborers Vacation-Holiday Trust Fund for Northern California; (3) Laborers Pension Trust Fund for Northern California; and (4) Laborers Training and Retraining Trust Fund for Northern California. FAC at 2. The Trust Funds are employee benefit plans within the meaning of sections 3, 4, and 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002, 1003 and 1132. *Id*.

Plaintiffs allege that DeBruin is an employer within the meaning of section 3(5) and section 515 of ERISA, 29 U.S.C. §§ 1002(5), 1145. *Id*. On August 24, 2010, Richard DeBruin, on behalf of DeBruin, signed a Memorandum Agreement with the Northern California District Council of Laborers agreeing to be bound by the Laborers Master Agreement (hereinafter "Master Agreement") and the Trust Agreements which govern each of the Trust Funds. Complaint at 2-3; Declaration of Michelle Lauziere in Support of Motion for Default Judgment ("Lauziere Decl") ¶7 & Ex. A (Trust Agreements), Ex. B (Memorandum Agreement), Ex. C (Laborers Master Agreement 2006-2010), Ex. D (Laborers Master Agreement 2010-2012), Ex. E (Master Agreement 2012-2015). Under the Master Agreement, employers are required to contribute and pay to the Trust Funds the hourly amounts required under the Trust Agreements for each hour paid for or worked by any of its employees who performed any covered work. FAC at 3; Lauziere Decl., Exs. C-E, Section 28A. Under the Trust Agreements, employers are required to report the contributions due and make payments no later than the 25th day of the following month; if payments are not made by that date they become delinquent. Lauziere Decl. ¶ 9 & Ex. A (Trust Agreements), Article II, Sections 9-10. The Master Agreement also provides for liquidated damages and interest on delinquent contributions, stating in a "Side Letter" to the Master Agreement as follows:

> All delinquent contributions shall bear simple interest at the rate of one and one-half percent (1.5%) per month until receipt of payment. Subject to account verification, liquidated damages shall be assessed

> on delinquent contributions at a flat rate of one hundred and fifty dollars ($150.00) per month to reflect the internal administrative costs incurred by the trust administrators in monitoring and tracking such late contributions.

Lauziere Decl., Ex. D (Master Agreement), Side Letter.

The Master Agreement further provides for an audit of the books and records of signatory employers so that the Trust Funds may determine if the employer is making full and prompt payment of required contributions. Lauziere Decl. ¶ 11 & Exs. C-E (Master Agreement), Section 7 ("Each Individual Employer, upon request of any Trust Fund specified in this Agreement, shall permit a Trust Fund Auditor to review any and all records relevant to the enforcement of the provisions of this Agreement pertaining to the Trust Funds").

The Trust Agreements provide that "[i]f any Individual Employer defaults in the making of Contributions or payments and if the Board consults legal counsel, or files any suit or claim, there will be added to the obligation of the Individual Employer who is in default, reasonable attorney's fees, costs and all other reasonable expenses incurred in connection with the suit or claim . . . ." Lauziere Decl., ¶ 13 & Ex. A (Trust Agreements), Article IV, Section 3.

According to Plaintiffs, Debruin never gave written notice of his intent to terminate the collective bargaining agreements and therefore, the obligations under those agreements continue in full force and effect. Lauziere Decl., ¶ 8.

In the FAC, Plaintiffs alleged that Defendants failed to make contributions that were required under the Master Agreement and Trust Agreements "in the sum estimated to be at least $44,762.46" for the period April 2009 through June 2012." Complaint at 4. In addition, Plaintiffs alleged that Defendants owed liquidated damages and interest for unpaid contribution "in the sum estimated to be at least $5,762.66" and additional liquidated damages and interest on contributions that were paid but paid late "in the sum estimated to be at least $4,876.56. Plaintiffs asserted the following claims: 1) breach of contract; 2) actual damages for breach of contract; 3) damages and equitable relief for breach of fiduciary duty, which Plaintiffs alleged constituted a violation of ERISA, 29 U.S.C. § 1145; 4) audit; and 5) alter ego liability as to Richard Debruin. In their prayer, Plaintiffs requested an order requiring Debruin and Richard Debruin to pay: 1) unpaid contributions in the amount of $44,762.46;  2) $10,639.22 in liquidated damages and interest on

late and unpaid contributions; and 3) attorneys' fees and costs. In addition, Plaintiffs asked the Court to issue an order enjoining Defendants: 1) to submit all reports and contributions that are presently due and owing; 2) to comply with its obligations to timely submit contribution reports and make contribution payments going forward; and 3) to submit to an audit.

### B. Service

Plaintiffs filed their initial Complaint on October 24, 2012. They were unable to locate DeBruin's agent for service of process, Richard DeBruin, and the Court, after initially denying Plaintiffs' request, granted their request to serve the FAC and summons by publication on June 25, 2014. See Docket No. 39. Plaintiffs published the summons in The Record, a newspaper of general publication printed and published daily in the City of Stockton, San Joaquin County. The summons appeared in The Record on July 14, 21, 28, and August 4, 2014. Proof of publication was filed with the Court on August 8, 2014, See Docket No. 40. Plaintiffs have not had any communication with Defendants in response to publication of the summons. Declaration of Concepción E. Lozano-Batista in Support of Motion for Default Judgment ("Lozano-Batista Decl.") ¶ 3. Defendants did not file an answer or response to Plaintiffs' Complaint. Default was entered by the Clerk against Defendants on August 26, 2014.

### C. The Motion

In the Motion, Plaintiffs ask the Court to enter default judgment against DeBruin[2] and to award: 1) $44,762.46 in unpaid contributions for September 2011 to December 2011 and April 2012; 2) $750 in liquidated damages and $22,953.16 in interest on unpaid contributions for the same period; and 3) $2,250 in liquidated damages and $2,626.56 in interest on payments that were made late for "numerous months between April 2009 and March 2012." Motion at 8-9; Lauziere Decl., ¶¶ 14-15 & Exs. F, G.[3] Plaintiffs also request $14,461.25 in attorneys' fees and $2,066.35

---

[2] Plaintiffs dismissed Richard DeBruin without prejudice on October 9, 2014. As noted above, Plaintiffs have stipulated that they seek entry of Default Judgment as to DeBruin only and not as to Richard DeBruin.

[3] In response to the Court's request at the motion hearing, Plaintiffs provided a declaration explaining exactly how these amounts were obtained, addressing each specific month at issue and providing the underlying contribution reports for those months as well. *See* Supplemental Declaration of Michelle Lauziere in Support of Plaintiffs' Motion for Default Judgment ("Lauziere Supp. Decl.").

in costs incurred to date, as well as $1,380.00 in attorneys' fees that Plaintiffs anticipated would be incurred at the hearing and executing the judgment. Motion at 9-10; Lozano-Batista Decl., ¶¶ 15-16. In addition, Plaintiffs ask the Court to order that Debruin be required to submit to an audit and to retain jurisdiction over this action to ensure payment of any amounts due and owing. Motion at 10.

## III. ANALYSIS

### A. Entry of Default Judgment

Plaintiffs have applied for a default judgment in this action on the basis that Defendant failed to plead or otherwise defend or appear after valid service. Under Federal Rule of Civil Procedure 55(b)(2), the court may enter a default judgment once the Clerk, under Rule 55(a), has entered the party's default based upon a failure to plead or otherwise defend the action. Fed. R. Civ. P. 55(b)(2). "A default judgment may be entered against an infant or incompetent person only if represented by a general guardian, committee, conservator, or other like fiduciary who has appeared." If the court is satisfied that jurisdiction is proper and that service of process upon the defendant was adequate, courts are instructed to consider several facts in determining whether to grant default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In making its decision, the court takes all factual allegations in the complaint, except those relating to damages, as true. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). Where a court finds that default should be granted, it may award damages if the plaintiff satisfies its burden of proving the damages through evidence. *See id.*

Here, the record supports the conclusion Defendant is not exempt from default judgment on the basis that it is an infant, incompetent, soldier or sailor. Debruin is a corporation and

therefore not an infant, incompetent person, soldier or sailor. *See*, *e.g.*, *F.T.C. v. J.K. Publications, Inc.*, 2000 WL 35594144, at *1 (C.D. Cal., Aug. 31, 2000) ("Defendants are not corporations and are therefore not infants or incompetent persons").

Further, Plaintiffs have effected adequate service. In particular, as stated in the Court's previous order, service by publication was warranted because Plaintiffs exercised reasonable diligence in attempting to serve Debruin. Docket No. 39. Further, Plaintiffs have submitted evidence that they published notice on July 14, 21, 28, and August 4, 2014 in The Record, which is a newspaper of general publication printed and published daily in the City of Stockton, San Joaquin County. *See* Docket No. 44-1. As discussed in the Court's previous order, DeBruin was an active corporation with an address in Stockton, California and Richard DeBruin was listed as an agent for service of process at a Stockton address. *See* Docket No. 39 at 3-4. Therefore, Plaintiffs have satisfied the requirements of Cal. Code Civ. Proc. § 415.50(b) and Cal. Gov't Code § 6064, which govern service by publication.[4]

**B. Remedy**

**1. Section 1132(g)**

Once liability is established through a defendant's default, a plaintiff is required to establish that the requested relief is appropriate. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citing *Pope v. United States*, 323 U.S. 1, 12 (1944)). Under ERISA, an employee

---

[4] Section 415.50(b) provides as follows:

> The court shall order the summons to be published in a named newspaper, published in this state, that is most likely to give actual notice to the party to be served. If the party to be served resides or is located out of this state, the court may also order the summons to be published in a named newspaper outside this state that is most likely to give actual notice to that party. The order shall direct that a copy of the summons, the complaint, and the order for publication be forthwith mailed to the party if his or her address is ascertained before expiration of the time prescribed for publication of the summons. Except as otherwise provided by statute, the publication shall be made as provided by Section 6064 of the Government Code unless the court, in its discretion, orders publication for a longer period.

Cal. Code Civ. Proc. § 415.50(b). Section 6064 of the California Government Code requires that "[p]ublication of notice pursuant to this section shall be once a week for four successive weeks."

6

benefit plan that obtains judgment in its favor in an action for unpaid contributions under 29 U.S.C. § 1145 is entitled to the following forms or relief:

    (A) the unpaid contributions,

    (B) interest on the unpaid contributions,

    (C) an amount equal to the greater of –

        (1) interest on the unpaid contributions, or

        (2) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph (A),

    (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

    (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). This section further provides that "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26. *Id*.

### 2. Contributions

Plaintiffs must submit proof of their damages. *TeleVideo*, 826 F.2d at 917-18; *Geddes*, 59 F.2d at 560. In the Motion, Plaintiffs seek $44,762.46 in unpaid contributions for September 2011 to December 2011 and April 2012. Lauziere Decl. ¶ 14 & Ex. F. In addition, in their supplemental materials, Plaintiffs have provided supporting documentation in the form of the contribution reports, as well as a detailed explanation by the Accounts Receivable Manager of the calculation of the outstanding contributions. *See* Lauziere Supp. Decl., ¶¶ 4-29. Therefore, it is recommended that this amount be awarded in full.

### 3. Liquidated Damages

Plaintiffs seek a total of $3,000 in liquidated damages on both unpaid contributions and contributions for the months of April 2009 through March 2012 that were paid at the time the FAC was filed but had been paid late. *See* Lauziere Supp. Decl., ¶¶ 4-5.

Liquidated damages of up to 20 percent are permitted under 29 U.S.C. § 1132(g)(2) on contributions that are unpaid at the time an action is filed, even if the contribution is subsequently paid. *See Idaho Plumbers & Pipefitters Health and Welfare Fund v. United Mech. Contractors,*

*Inc.*, 875 F.2d 212, 215 (9th Cir. 1989). There is some disagreement among the courts of this district as to whether *Idaho Plumbers* also allows for the award of liquidated damages on late contributions that were paid *before* an action was filed so long as there were unpaid contributions for other months at the time the suit was initiated. *See Trustees of Bricklayers Local No. 3 Pension Trust v. Huddleston*, 2013 WL 2181532, at *5 (N.D.Cal., 2013) (discussing split of authority). The undersigned agrees with the conclusion of Judge Corley, in *Huddleston*, that the approach that is most consistent with the language of § 1132(g) and the reasoning of *Idaho Plumbers* is the one that has found that liquidated damages on contributions paid *before* the action is initiated are not available under ERISA. *See id*. Nonetheless, the court in *Idaho Plumbers* found that ERISA does not preempt the federal common law of liquidated damages where 29 U.S.C. § 1132(g)(2) does not apply. Further, this Court has found, under similar facts, that a provision providing for liquidated damages at a flat rate of $150 was enforceable as a matter of federal common law. *See Bd. of Trustees v. KMA Concrete Construction Co*., 2011 WL 7446345, at * 4 (N.D. Cal. Dec. 20, 2011). For the reasons stated in *KMA*, the Court finds that the liquidated damages provision in the Master Agreement in this case is enforceable.

The Court further finds, based on the detailed explanation of Plaintiffs' calculation of liquidated damages provided in their supplemental materials, that the amount requested by Plaintiffs is supported by the evidence Plaintiffs have provided in support of the Motion. *See* Lauziere Supp. Decl., ¶¶ 4-29. Therefore, it is recommended that the liquidated damages requested by Plaintiffs be awarded in full.

### 4. Interest

In their Motion, Plaintiffs seek interest on the unpaid contributions in the amount of: 1) $22,953.16 in interest on unpaid contributions for the months of September 2011 to December 2011 and April 2012; and 2) $2,626.56 in interest on payments that were made late for months between April 2009 and March 2012. Lauziere Supp. Decl., ¶¶ 4-5.

Under 29 U.S.C. § 1132(g), Plaintiffs are entitled to interest under ERISA for contributions that are unpaid at the time the action was filed, even if the contributions are later paid. *See Idaho Plumbers*, 875 F.2d at 215. In addition, interest on contributions that were paid at the time the

action was filed but were paid late may be available as a matter of contract.  *See Board of Trustees of Laborers Health and Welfare Trust Fund for Northern Cal. v. Shade Const. and Engineering*, 2007 WL 3071003, at *7 (N.D.Cal., Oct. 19, 2007) (citing *Idaho Plumbers*, 875 F.2d at 217).  In *Shade Construction*, the court found that a provision in the master agreement setting interest on late contributions at a rate of 1.5% per month was enforceable.

Plaintiffs have provided a detailed explanation of their calculation of interest on the delinquent and unpaid contributions.  *See* Lauziere Supp. Decl., ¶¶ 4-29.  Accordingly, the Court should award the full amount requested by Plaintiffs in interest, that is, $25,579.72.

### 5. Attorneys' Fees

Plaintiffs are entitled to attorneys' fees under ERISA and the Trust Agreements.  29 U.S.C. § 1132(g)(2)(D); Lauziere Decl. ¶ 13, Ex. A (Trust Agreements),  Art. IV, §3.  Plaintiffs request $14,461.25 in attorneys' fees for a total of 56.75  hours of work performed as of October 9, 2014.[5]  Motion at 10; Lozano-Batista Decl., ¶ 5.  This amount includes the following fees: 1) $899.00 for work performed by Teresa Rojas Alou,[6] Senior Paralegal (6.2 hours at a rate of $145.00 per hour); 2) $5,945.00 for work performed by Daniel S. Brome, Associate (20.5 hours at a rate of $290.00 per hour); 3) $1,087.50 for work performed by Judy Castillo, Senior Paralegal (7.5 hours at a rate of $145.00 per hour); 4) $276.00 for work performed by Barry E. Hinkle, Shareholder (.8 hours at a rate of $345.00 per hour); 5) $326.25 for work performed by Eleanor Natwick, Paralegal (2.25 hours at a rate of $145.00 per hour); 6) $3,881.25 for work performed by Conchita Lozano-Batista, Shareholder (11.25 hours at a rate of $345.00 per hour); 7) $603.75 for work performed by Roberta Perkins, ( 1.75 hours at $345.00 per hour);  8) $862.50 for work performed by Stephanie Marn, Associate  (2.5 hours at $345.00 per hour);   9) $580 for work performed by Aaron Nathan, Senior Paralegal . *Id*.

---

[5] Plaintiffs also stated that they anticipated that they would incur a total of $1,380 in attorneys' fees in connection with the default judgment motion.  They did not, however, provide any time sheets or declarations documenting this time, either before or after the motion hearing.  Therefore, it is recommended that Plaintiffs' request for these additional fees be DENIED.

[6] Teresa Rojas Alou is also referred to as Teresa Oviedo in the Lozano-Batista Declaration.  At oral argument, Plaintiffs' counsel explained that Ms. Oviedo has changed her name and that both refer to the same individual.

The Court finds the requested rates and amounts to be reasonable. Plaintiffs provided detailed time sheets showing the time and tasks performed by each attorney and paralegal for which it seeks fees. Lozano-Batista Decl., Exs. A-B. Plaintiffs have also described in a declaration the level of experience for each attorney and paralegal. *See* Lozano-Batista Decl. ¶¶ 6 - 14. Courts in this district, in similar cases, have awarded the same hourly rates requested in this case for work performed by attorneys Brome and Hinkle, and for work performed by paralegals Natwick, Castillo and Alou. *See Bd. of Trustees v. C & L Coatings*, No. 12-1368 (MEJ), 2012 WL 7748318, at *10 (N.D. Cal. Dec. 18, 2012), *report and recommendation adopted*, 2013 WL 1087849 (N.D. Cal. March 13, 2013) (awarding $345 per hour to Mr. Barry Hinkle, $290 per hour to Mr. David Brome, and $145 per hour to paralegal Ms. Eleanor Natwick); *Bd. of Trustees v. KMA Concrete Const. Co.*, No. 10-5831, 2011 WL 4031134 (N.D. Cal. Aug. 12, 2011), *report and recommendation adopted*, 2011 WL 4031100 (N.D. Cal. Sept. 8, 2011) (awarding $145 per hour to paralegals Ms. Eleanor Natwick and Ms. Judy Castillo); *Bd. of Trustees v. LML Enterprises, Inc*., Case No. C-13-3117 RS, Docket No. 30 (Report and Recommendation recommending that fees be awarded for work by Teresa Rojas Arou at rate of $145/hour) and 37 (adopting Report and Recommendation).

It is recommended that the Court award $14,461.25 in attorneys' fees.

### 6. Costs

Plaintiffs request costs in the amount of $2,066.35. Lozano-Batista Decl., ¶ 16 & Ex. B. The costs listed in the Schedule of Costs provided by Plaintiffs fall into the following categories: 1) filing fees ($525.00); 2) costs of service, including investigation costs, costs incurred in attempting to serve DeBruin and costs of service by publication ($1,195.80); 3) legal research ($229.00); 5) attorney travel ($27.80); 6) copy costs and delivery service incurred in connection with providing chambers copies of filed documents ($88.7).   Under Civil Local Rule 54-3, an award of costs may include the clerk's filing fee and fees for service of process "to the extent reasonably required and actually incurred." In addition, the Trust Agreements provide for the recovery of all expenses incurred in collection. The Court concludes that the costs requested by Plaintiffs are reasonable and therefore recommends that they be awarded in full.

### 7. Audit

The Supreme Court has held that where a collective bargaining agreement gives the Trustees of an employee benefit plan the right to audit an employer's books and records, it will be enforced. *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 569 (1985). Here, the Master Agreement expressly provides that a signatory employer shall submit to an audit of its records upon request. Therefore, it is recommended that the Court issue an order compelling Defendant to submit to a full audit. The Court does *not* recommend, however, that the injunction include an order that Defendant "pay all amounts found due and owing as a result of said audit of its books and records pursuant to the Trust Agreements," as requested in Plaintiffs' proposed order. Judges in this district have likened provisions such as this to a "blank check" and have declined to award such relief. *See, e.g., Bay Area Painters and Tapers v. Brown*, 2007 WL 1302982, at *3 (N.D.Cal., May 3, 2007) (Alsup, J.) (Finding that proposed injunction amounted to a "blank check" where Plaintiffs would "fill in the amount of that 'check' when they later determine the contributions due" and declining to award requested relief); *Board of Trustees in their capacities as Trustees of Laborers Health and Welfare Trust v. Geotech Const., Inc.*, 2008 WL 3496474, at *2 (N.D.Cal., July 18, 2008) (Zimmerman, J.) (same). As Judge Alsup noted in *Brown*, "Plaintiffs may demand that defendant comply with [the provisions of the collective bargaining agreement] once they determine the amount of damages owed. If defendant fails to comply at that time, plaintiffs may seek to enforce the determined amount at that time." 2007 WL 1302982, at *5.

### IV. CONCLUSION

For the reasons stated above, it is recommended that the Motion be GRANTED. The Court should award the following relief: 1) unpaid contributions in the amount of $44,762.46; 2) liquidated damages in the amount of $3,000.00; 3) interest in the amount of $25,579.72; 4) attorneys' fees in the amount of $14,461.25; and 5) costs in the amount of $2,066.35. In addition, it is recommended that the Court GRANT Plaintiffs' request for injunctive relief as set forth in their proposed order, Docket No. 53, at 2:26 -3:6. It is further recommended, however, that the Court omit from its Order the language contained in Paragraph 4 of the Proposed Order, requiring

11

1  Defendant to "pay all amounts found due and owing as a result of said audit of its books and
2  records pursuant to the Trust Agreements."  Finally, it is recommended that the Court retain
3  jurisdiction over this action so that Plaintiffs may seek amendment of the judgment, if appropriate,
4  following an audit.

6  Dated: January 14, 2015

_____
JOSEPH C. SPERO
United States Magistrate Judge